# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN OVERSIGHT,

       *Plaintiff*,

   v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

       *Defendant*.

Civil Action No. 18-364 (TJK)

## <u>MEMORANDUM OPINION</u>

In June 2017, American Oversight submitted three requests to the Environmental

Protection Agency for communications records under the Freedom of Information Act.  The

EPA, determining that each request did not reasonably describe the records sought, told

American Oversight that it could not process its requests without additional clarification.

American Oversight disagreed, arguing that its requests as written reasonably described the

records it was seeking, and declined to provide additional clarification.  The EPA consequently

denied the requests.

American Oversight then sued, claiming that the EPA unlawfully refused to process its

requests under FOIA.  It sought to compel the agency to conduct searches and release any non-

exempt, responsive records.  Over the course of this proceeding, the parties resolved their

disputes about American Oversight's three requests.  But that did not end the matter.  American

Oversight also alleges that the EPA's refusals to process those requests resulted from an

unlawful policy or practice, and it seeks an injunction prohibiting the EPA from continuing to

apply that alleged policy to future requests.  The parties have cross-moved for summary

judgment on this remaining claim.

American Oversight argues specifically that the EPA maintains a policy or practice of refusing to process any request for communications records unless it provides a subject matter or keyword for the search. The record, however, tells a different story. The EPA's responses to American Oversight's requests, and the requests from other organizations that American Oversight holds up in support of its claim, vary depending on the specifics—or lack thereof—of each request. For almost all the requests identified by American Oversight, the absence of an identified subject matter or keywords was one of multiple reasons the EPA asserted it was not reasonably described and requested more information to process it. And the EPA provides several examples of requests it agreed to process that *did not* include subject matters or keywords. Thus, the record cannot sustain American Oversight's claim that the EPA has a policy of refusing to process a request unless it receives subject matters or keywords.

Accordingly, and for the reasons explained below, the EPA's Partial Motion for Summary Judgment, ECF No. 11, will be granted and American Oversight's Motion for Summary Judgment, ECF No. 8, will be denied.[1]

## I.    Background

### A.    Factual Background

Plaintiff American Oversight is an organization "committed to the promotion of transparency in government, the education of the public about government activities, and

---

[1] In considering these motions, the Court relied on all relevant parts of the record, including: ECF No. 1 ("Compl."); ECF No. 8-1 ("Pl.'s MSJ"); ECF No. 8-2 ("Creighton Decl."); ECF No. 8-3 to ECF No. 8-21 (Plaintiff's Exhibits, designated as "Pl.'s Ex. __"); ECF No. 9 ("Answer"); ECF No. 11-1 ("Def.'s MSJ"); ECF No. 11-2 at 1–6 ("White Decl."); ECF No. 11-2 at 7–95 (Defendant's Exhibits, designated as "Def.'s Ex. __"); ECF No. 15 ("Pl.'s Opp'n"); ECF No. 15-1 ("Supp. Creighton Decl."); and ECF No. 16 ("Def.'s Reply").

ensuring the accountability of government officials." Compl. ¶ 5.[2] To educate the public about

the activities of the federal government, American Oversight conducts research on the operations

of federal agencies, in part through requests under the Freedom of Information Act (FOIA), 5

U.S.C. § 552. Compl. ¶ 5. At issue here are several FOIA requests American Oversight directed

to the Environmental Protection Agency (EPA) on June 23, 2017, each seeking email records

from former EPA Administrator Scott Pruitt and senior members of his staff. *See* Compl. ¶¶ 12–

15. For ease and clarity, the Court adopts the labels for each request used by American

Oversight in its briefing.

The first request, the "Pruitt Communications FOIA," asked for:

> All emails between Scott Pruitt and Ryan Jackson (Chief of Staff), John Reeder
> (Deputy Chief of Staff), or Mike Flynn (Acting Deputy Administrator) from June
> 1, 2017, to June 15, 2017.

Pl.'s Ex. 1.

The second request, the "Outside Communications FOIA," asked for:

> All emails between (a) Scott Pruitt, Ryan Jackson (Chief of Staff), John Reeder
> (Deputy Chief of Staff), or Mike Flynn (Acting Deputy Administrator) and (b)
> any email address not containing a .gov domain name (i.e., email addresses with
> domain names that include .com, .net, .org, or .edu) from June 1, 2017, to June
> 15, 2017.

Pl.'s Ex. 2.

The third request, the "Congressional Communications FOIA," asked for:

---

[2] The facts recounted here are undisputed unless otherwise noted. On that point, however, the
Court notes that American Oversight included a supplemental statement of undisputed material
facts with its consolidated opposition to the EPA's motion and reply in support of its motion.
*See* ECF No. 15-2. In its reply, the EPA objected to that inclusion, noting that Local Civil Rule
7(h)(1) does not entitle American Oversight to file such a supplemental statement. *See* ECF No.
16-1. The Court agrees and will therefore disregard American Oversight's supplemental
statement and the EPA's responses thereto. *See Robertson v. Am. Airlines, Inc.*, 239 F. Supp. 2d
5, 8 (D.D.C. 2002) (noting that "the D.C. Circuit has repeatedly upheld district court rulings that
hold parties to strict compliance with [the predecessor of LCvR 7(h)(1)]" and collecting cases).

All emails between (a) Scott Pruitt, Ryan Jackson (Chief of Staff), John Reeder (Deputy Chief of Staff), or Mike Flynn (Acting Deputy Administrator) and (b) any email address containing a house.gov or senate.gov domain from June 1, 2017, to June 15, 2017.

Pl.'s Ex. 3.

Six days later, American Oversight received three emails from the EPA's FOIA division, stating that the EPA needed more details to process its requests. Responding to the Pruitt Communications FOIA, the EPA stated that it "[could not] process [American Oversight's] request at [that] time as it [did] not reasonably define a set of records to search as required by the FOIA and EPA regulations," citing 5 U.S.C. § 552(a)(3) and 40 C.F.R. § 2.102(c). Pl.'s Ex. 4. The email specified further that the request "fail[ed] to provide details such as the subject matters, titles[,] or key terms." *Id.* And it invited American Oversight to contact the EPA to "clarify [its] request." *Id.*

The email responding to the Outside Communications FOIA also stated that the EPA could not process the request because it was not reasonably described. Pl.'s Ex. 5. The EPA explained that the request "fail[ed] to provide details such as the names of potential authors or recipients, subject matters, titles[,] or key terms." *Id.* It also stated that "the language regarding domain names [was] insufficient to allow the EPA to discern the subject matter and authors or recipients outside of EPA [it] [was] interested in." *Id.* The EPA invited American Oversight to contact it and clarify its request. *Id.*

The email responding to the Congressional Communications FOIA again stated that the EPA could not process the request because it was not reasonably described. Pl.'s Ex. 6. Explaining further, it stated that the request "fail[ed] to provide details such as subject matters, titles[,] or key terms," and that "limiting [the] request to the domains house.gov or senate.gov [was] insufficient to allow the EPA to discern the subject matter and senators or representatives

[American Oversight] was interested in." *Id.* The EPA encouraged American Oversight to reach out and clarify its request.

About a week after the EPA sent those emails, American Oversight responded, making clear that it "remain[ed] interested in the documents sought by each of [its] FOIA requests." Def.'s Ex. G. And it further asserted that it "[did] not believe that those requests fail[ed] to reasonably define the requested records." *Id.* "Each request," American Oversight contended, "clearly identifie[d] particular custodians and a finite date range of the communications [it was] interested in," and it stated that the "EPA [was] wrong to suggest that the FOIA statue requires a request to limit the records sought to those using particular keywords or search terms." *Id.* American Oversight then tried to make clear that it was "asking for <u>all</u> records from certain individuals within a certain date range and with certain limitations as specified in each request (to/from/domain/etc.)." *Id.* A few days later, counsel for American Oversight and an EPA employee spoke about these requests and the parties' respective positions. *See* White Decl. ¶ 11; Creighton Decl. ¶ 23.

Several weeks later, the EPA sent three separate letters to American Oversight denying its FOIA requests. *See* Def.'s Ex. H; Def.'s Ex. I; Def.'s Ex. J. In each, the EPA stated that it could not process American Oversight's request as it was constructed because it "did not reasonably define a set of records to search," and, noting that American Oversight "provid[ed] no further clarification" in its response to the EPA's prior email, denied the request. *Id.* About two weeks later, American Oversight filed a consolidated administrative appeal of all three denials. *See* Def.'s Ex. K. When American Oversight filed its complaint, the EPA had not yet responded to the appeal. *See* White Decl. ¶ 13; Creighton Decl. ¶ 27.

## B.    This Action

American Oversight commenced this action in February 2018, bringing three claims under FOIA.  Two of those claims concern the three requests for emails outlined above.  They allege, respectively, that the EPA failed to conduct an adequate search for records in response to those request (Count II) and that the EPA was wrongfully withholding non-exempt agency records responsive to those requests (Count III).  *See* Compl. ¶¶ 53–66.  Those claims, after the parties negotiated specific search parameters and the EPA produced responsive documents, have since been resolved.  *See* ECF No. 23 (joint status report discussing parties' settlement of claims).  The third claim alleges that the EPA "has adopted and is engaged in a policy, pattern, or practice of violating FOIA's requirement that agencies search for records in response to a reasonably described request" (Count III).  Compl. ¶ 46.  Pending are the parties' cross-motions for summary judgment on this single remaining claim.

## II.   Legal Standards

### A.    Freedom of Information Act

Congress enacted FOIA in 1966 "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  The Act confers jurisdiction on district courts "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld," 5 U.S.C. § 552(a)(4)(B), and it "imposes no limits on courts' equitable powers in enforcing its terms,"  *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

An agency's duties under FOIA are triggered "only once [the] agency has received a proper FOIA request."  *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 185 n.3 (D.C. Cir. 2013).  A proper request "reasonably describes" the records sought and must be

"made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). Once an agency receives a proper request, it must conduct "a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). And those records must be disclosed "unless they fall within one of [FOIA's] nine exemptions," which are to be "narrowly construed." *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011) (quoting *FBI v. Abramson*, 456 U.S. 615, 630 (1982)). The burden is on the agency to justify that it has performed an adequate search in response to a proper FOIA request and the propriety of any claimed exemption. *See Nat'l Sec. Counselors v. CIA* ("*NSC II*"), 960 F. Supp. 2d 101, 132 (D.D.C. 2013); *see also* 5 U.S.C. § 552(a)(4)(B).

Once an agency produces the records in dispute in a FOIA action, ordinarily the court has no further role to play. But the D.C. Circuit has recognized that a plaintiff may still be entitled to equitable relief if he can show that the agency employs a "*policy or practice* [that] will impair [his] lawful access to information in the future." *Payne*, 837 F.2d at 491; *see also Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770 (D.C. Cir. 2018); *Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160 (D.C. Cir. 2012). This claim is often referred to as a "policy-or-practice" claim.

### B.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), the Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on such a motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. And such a dispute

"is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To show that "a fact cannot be or is genuinely disputed," a party must cite to "particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The initial burden is on the moving party to show the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But in opposing a properly supported motion for summary judgment, the nonmoving party "may not rest upon mere allegations or denials," and must instead "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). When the applicability of an exemption or the adequacy of an agency's search are at issue, an agency may satisfy its burden— and summary judgment for the agency may be granted—based solely on the agency's affidavits. *See Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). But in the context of a policy-or-practice claim, the plaintiff bears the burden of demonstrating that the alleged policy or practice exists and that it will impair his access to information under FOIA in the future. *See Am. Ctr. for Law & Justice v. U.S. Dep't of State*, 289 F. Supp. 3d 81, 87 (D.D.C. 2018).[3] And summary judgment on that claim is properly granted against the plaintiff if he "fails

---

[3] In *Payne* and in *Newport*, the existence of the policy was not in dispute, and thus the Circuit had no opportunity to clarify that the plaintiff bears the burden of showing that agency conduct constitutes a policy when the existence of that policy is disputed. *See Payne*, 837 F.2d at 491 n.8; *Newport*, 684 F.3d at 164. To be sure, 5 U.S.C. § 552(a)(4)(B) places the burden on the agency "to sustain its action"—that is, to justify the adequacy of its searches and the propriety of its withholdings. But the plaintiff ordinarily bears the burden of establishing both the court's jurisdiction and the plaintiff's right to relief, and the Court sees no reason why that should not apply to a plaintiff's claim that a policy or practice exists that will continue to harm the plaintiff

to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *NSC II*, 960 F. Supp. 2d at 133 (quoting *Celotex*, 477 U.S. at 322); *see also Anderson*, 477 U.S. at 252 ("[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.").

## III.    Analysis

American Oversight contends that the EPA has adopted a policy of refusing to process FOIA requests for communications records that do not provide specific keywords or subject matters.  Specifically, it describes that alleged policy in its complaint as "a policy, pattern, or practice of declining to process FOIA requests for communications that clearly identify the custodians, recipients, and date range for the records sought on the grounds that they do not provide keywords, search terms, or a particular subject matter."  Compl. ¶ 41.  As evidence of this alleged policy, American Oversight points to the three June 2017 FOIA requests cited in its complaint, as well as three additional FOIA requests submitted to the EPA by American Oversight and other similar organizations over the past few years.  *See* Compl. ¶¶ 26–40. According to American Oversight, each of those requests "reasonably described" the records sought, thus triggering the EPA's obligation to conduct a search, but the agency refused to do so because the requests failed to provide "a keyword or a search term that could be used to narrow the scope of the request."  Pl.'s MSJ at 11–12.  And that recurrent response, American Oversight contends, manifests a practice by the EPA of unlawfully refusing to process a proper FOIA request because it does not provide a keyword or search term.  *See id.* at 11; *see also id.* at 13

_____

in the future.  Indeed, it would be nonsensical to expect the agency, without first any showing from the plaintiff, to *disprove* the existence of an alleged policy or practice.

("[T]he EPA refused to process [the] requests unless American Oversight provided a subject matter or search term for use in processing the request.").

The EPA disputes that its responses to American Oversight's three June 2017 requests were improper, and it argues further that even if any of them were, they did not result from an "impermissible" policy or practice that violates FOIA. Def.'s MSJ at 10–14. On the first point, the EPA maintains that it "reasonably determined that [American Oversight's] three FOIA requests . . . did not adequately describe the records sought," and therefore "[p]ermissibly [s]ought [c]larification." *Id.* at 10. But even if any of American Oversight's requests did adequately describe the records sought, the EPA asserts, its responses were based on individualized assessments of the requests, and not the result of a broader policy or practice that violates FOIA. *Id.* at 12–16. For each request, the EPA argues, it provided a response "tailored to the perceived deficiencies of that specific request" and "identifying the additional information needed." *Id.* at 13. And as further evidence that it does not employ a practice of denying FOIA requests for communications records unless they contain a subject matter or keywords, the EPA proffers three recent examples of requests the EPA processed that *did not* include those details. *See* White Decl. ¶ 19; Def.'s Ex. M; Def.'s Ex. N; Def.'s Ex. O.

In light of those arguments, and given the record before it, the Court finds that the EPA is entitled to judgment on American Oversight's claim as a matter of law.

When a party has been unlawfully denied access to records under FOIA, it may, even after those records are disclosed, continue to seek equitable relief from the agency because the unlawful denial resulted from a "*policy or practice* [that] will impair the party's lawful access to information in the future." *Payne*, 837 F.2d at 491. That policy or practice can be informal; it need not be "articulated in regulations or an official policy statement." *Id.* "[N]ot all agency

delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention," however. *Judicial Watch*, 895 F.3d at 782. To be entitled to equitable relief, the requesting party must demonstrate "that the agency has adopted, endorsed, or implemented [that] policy or practice," that the policy or practice "constitutes an ongoing 'failure to abide by the terms of the FOIA,'" and that the denials at issue in the plaintiff's complaint were the result of that policy or practice. *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting *Payne*, 837 F.2d at 491).

American Oversight's claim falls short of that showing. According to the complaint, the alleged "policy or practice" underlying its claim is a refusal to process an otherwise reasonably described request for communications records that "clearly identif[ies] the custodians, recipients, and date range for the requested records on the grounds that they do not specify keywords, search terms, or a particular subject matter." Compl. ¶ 47; *see also* Pl.'s MSJ at 11–12 (arguing that the six instances identified of "refus[ing] to process FOIA requests that clearly described the requested records on the grounds that the requester had not provided a keyword or search term that could be used to narrow the scope of the request . . . constitutes a policy or practice of improperly denying reasonably described FOIA requests in violation of FOIA"). No doubt, categorically refusing to process any request for communications records unless that request provided a keyword or search term *would* violate FOIA.[4]

---

[4] A request "reasonably describes" records sought if "the agency is able to determine precisely what records are being requested." *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 610 (D.C. Cir. 1997) (quoting *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996)); *see also Hall & Assocs. v. EPA*, 83 F. Supp. 3d 92, 101 (D.D.C. 2015) ("A request must enable 'a professional agency employee familiar with the subject area to locate the record with a reasonable amount of effort.'" (quoting *Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000))). The Court sees no reason, and the EPA provides none, why a request for emails or other communications records *necessarily* must include a key word or subject matter

But American Oversight must demonstrate that the unlawful FOIA policy described above is in fact a policy "adopted, endorsed, or implemented" by the EPA.  *Muttitt*, 926 F. Supp. 2d at 293.  And the undisputed record demonstrates that the EPA engaged in a case-by-case approach to each request that found them lacking for distinct reasons.  Significantly, Elizabeth White, the EPA official overseeing FOIA requests submitted to the EPA's Office of the Administrator, disclaims the existence of the alleged policy in her declaration, stating that all FOIA requests are reviewed individually and that "[w]hile some requests require [a] subject matter or keyword in order to conduct a search, other requests may not."  White Decl. ¶ 5.  That declaration, of course, is not dispositive, but the record of requests and EPA responses before the Court provides little evidence to contradict it.  Indeed, the EPA's responses to the several FOIA requests identified by American Oversight in its complaint, as outlined below, show a practice not of categorically denying any request that lacks keywords or subject matters, but of seeking clarification of requests that the EPA has concluded for various reasons—many of which appear to have been justified—are not reasonably described.

Turning first to American Oversight's requests highlighted in the complaint, of the EPA's responses to those three requests, only one—the response to the Pruitt Communications FOIA— concluded that the request did not "reasonably define a set of records to search" solely because the request "fail[ed] to provide details such as the subject matters, titles or key terms."  Def.'s Ex. D.  As to that request, the EPA has not explained why it could not reasonably discern the

---

for an agency to determine "precisely what records are being requested."  *Tax Analysts*, 117 F.3d at 607; *see also Muckrock v. CIA*, 300 F. Supp. 3d 108, 136–37 (D.D.C. 2018) (declaring unlawful a CIA policy of categorically refusing to process FOIA requests for emails unless they provide the sender, recipient, subject, and time frame, because "the CIA ha[d] done nothing to demonstrate that the agency's employees need all four pieces of information . . . in order to locate email records in the agency's information systems").

records sought and process the request when American Oversight sought all email records for a particular account across a two-week span. And the Court fails to see why, as the EPA insists, a subject matter or keyword was necessary.

In response to the Outside Communications FOIA, however, the EPA stated that it could not process the request because it "fail[ed] to provide details such as the *names of potential authors or recipients*, subject matters, titles or key terms" and because "*the language regarding domain names* [*was*] *insufficient* to allow [the] EPA to discern the subject matter and authors or recipients outside of [the] EPA" in which American Oversight was interested. Def.'s Ex. E (emphasis added). Indeed, an EPA official explained in an affidavit that the EPA could not search for emails in an EPA email account sent to or received from "any email address not containing a .gov domain name," as American Oversight requested, without excluding a large amount of if not all responsive records. *See* White Decl. ¶ 8.

American Oversight rejects these explanations, describing the EPA's account that it could not process the request without specified email domains "facially untenable" since the EPA listed examples in its request of domain names that the EPA could use. *See* Pl.'s Opp'n at 14–15; Pl.'s Ex. 2 at 2 (describing "any email address not containing a .gov domain name" as "email addresses with domain names that include .com, .net, .org, or .edu"). But in so arguing, American Oversight underscores the very shortcoming of its policy-or-practice claim. Its dispute as to this particular request is not with some unspoken policy of refusing to process the request until the requestor provides a keyword or subject matter for the email records sought, but with the EPA's specific determination that it could not search for the records without specifying non-.gov domain names for the potential authors or recipients. *See* Def.'s Ex. E; White Decl. ¶ 8. That response can hardly be said to evidence a policy or practice of denying a request for email

13

records solely because the request lacks a subject matter or keyword, particularly given that the EPA identified a separate—and notably request-specific—shortcoming of the request unrelated to the fact that it lacked those details.

Moreover, and further emphasizing that the lack of keywords or a subject matter was not the singular basis of its denial, the EPA's determination that it could not process American Oversight's request as stated appears to be justified. EPA official White asserts that the EPA could not search for the requested email records with non-.gov domain names by excluding .gov accounts because the requested emails must have at least one .gov participant, and thus that would necessarily leave out all or a significant portion of responsive emails. *See* White Decl. ¶ 8. American Oversight does not dispute that representation, but it claims that the EPA should have at least begun to process the request with the domain names suggested in the request. *See* Pl.'s Opp'n at 17. While that may be so, the Court need not decide whether the EPA's obligations to process the request were triggered to resolve American Oversight's policy-or-practice claim. The fact remains that, contrary to American Oversight's allegation, the EPA's response to this request does not show that it refused to process the request for email records unless and until American Oversight provided a subject matter or keyword. The central hold-up was about domain names.

Turning next to the Congressional Communications FOIA, the EPA's response demonstrates a similar, request-specific approach. In concluding that it did not reasonably describe the records sought, the EPA stated that it not only "fail[ed] to provide details such as subject matters, titles[,] or key terms," but also that "limiting [the] request to the domains house.gov or senate.gov [was] insufficient to allow the EPA discern the subject matter and senators or representatives" in which American Oversight was interested. Def.'s Ex. F. The

EPA identified specific shortcomings of the request, independent of the fact that the request did not provide any subject matter or keyword, and it sought clarification from the requester.  *Id.*  American Oversight tries to dismiss this explanation in a footnote, arguing that "a requester has no obligation to provide the actual names of the interlocutors in question," Pl.'s Opp'n at 5 n.2, but again, that argument reveals the problem with American Oversight's claim.  While that contention may be true, the alleged unlawful policy or practice only emerges once American Oversight casts off the EPA's other, case-specific reasons for finding the request ill-described.[5]  To be sure, unlike the Outside Communications request, the EPA provides little explanation why it could not search for emails in the accounts of the named custodians using the house.gov and senate.gov domains specified, and the Court fails to see how that request as written does not reasonably describe the records sought.  But that response, despite American Oversight's insistence, does not reveal that the determination resulted from a policy of refusing to process requests *solely because* they lack a keyword or subject matter.  *See* Pl.'s MSJ at 14 ("The Court

---

[5] Counsel for American Oversight contends that during a phone conversation with an EPA official following the EPA's response to the three June 2017 requests, "[t]o the best of [her] recollection, the only issue with those requests that was discussed . . . was the fact that the FOIA requests did not limit the records sought by subject matter, keyword, or search terms."  Supp. Creighton Decl. ¶ 3; *see also* Creighton Decl. ¶ 23 (representing that she "explained that American Oversight was not interested in narrowing its requests to certain subject matters, keywords, or search terms," and that the EPA official stated he "would raise the matter internally at EPA so that they could make a final determination").  But the undisputed records of the EPA's responses to American Oversight's requests, and the explanations stated therein, speak for themselves.  *See* White Decl. ¶¶ 7–10 (confirming the bases for denying the requests outlined in each response letter).  While the Court does not discount counsel's recollection, the *focus* of that phone conversation with the agency official, particularly in light of the existing record of the EPA's actual, reasoned responses to the requests, ultimately provides little insight as to whether the agency, in declining to process each request, was employing a policy or practice of rejecting any request that lacks a subject matter or keyword.  And in light of the insubstantial record of such a policy or practice, that anecdotal recollection does not raise a material dispute of fact about the existence of the policy or practice described by American Oversight.

should enjoin EPA from continuing to deny FOIA requests that clearly identify the requested records solely on the basis that they do not provide a subject matter, keyword, or search term.").

The other FOIA requests that American Oversight identifies reveal a similar case-by-case approach. In April 2017, American Oversight submitted requests for "[a]ll communications" between "any political or SES appointee in the Office of the Administrator . . . or the Office of Air and Radiation . . . , as well as anyone acting on behalf of those individuals" and (1) Carl Icahn, "any individual acting on behalf of Mr. Icahn," or anyone "acting on behalf of Icahn Enterprises or CVR Energy," or (2) anyone acting on behalf of Valero Energy. Pl.'s Ex. 15 at 2. The EPA responded that it could not process American Oversight's complaint without further clarification about *who* might "represent persons acting on behalf of Carl Icahn, persons at Icahn Enterprises, CVR Energy or Valero Energy." Pl.'s Ex. 16. A second request, submitted by an environmental organization, similarly sought all communications records between "Carl Icahn, his personal staff, or staff of CVR Energy or a subsidiary" and several unnamed individuals holding certain positions at the EPA or the President's staff or transition teams. *See* Pl.'s Ex. 18. Again, the EPA responded that it could not process the request because it was "silent as to who may comprise Carl Icahn's personal staff or staff of CVR energy, who among Administrator Pruitt's advisors [the requester] was interested in[,] and who comprise[d] President or President Elect Trump's advisors or staff." Pl.'s Ex. 19 at 1. The EPA's responses to these requests were self-evidently not based solely on their lack of keywords or subject matters, but on request-specific conclusions that the EPA could not process them without additional clarification as to the identities of the participants.[6]

---

[6] American Oversight also points to an additional FOIA request submitted to the EPA by a different environmental organization in 2017. *See* Compl. ¶¶ 35–40; ECF No. 8-22 ¶¶ 15–20.

And again, further emphasizing that these determinations were not the product of a policy of refusing to process requests that lack subject matters or keywords, EPA's conclusions appear justified. "A request must enable 'a professional agency employee familiar with the subject area to locate the record with a reasonable amount of effort.'" *Hall & Assocs.*, 83 F. Supp. 3d at 101 (quoting *Exp.-Imp. Bank*, 108 F. Supp. 2d at 27). "The agency is 'not obliged to look beyond the four corners of the request for leads' . . . , and ultimately 'it is the requester's responsibility to frame requests with sufficient particularity.'" *Id.* (quoting *Kowalczyk*, 73 F.3d at 389, then *Exp.-Imp. Bank*, 108 F. Supp. 2d at 27). As the EPA made clear in its responses, its employees could not determine from the text of the request, for purposes of conducting a search, which individuals are acting on behalf of Carl Icahn, Valero Energy, or CVR Energy, or which individuals comprise President or President-Elect Trump's advisors or staff. *See* Pl.'s Ex. 16; Pl.'s Ex. 19 at 1. Perhaps for that reason, American Oversight neglects to even address these explanations in its response. *See generally* Pl.'s Opp'n.

---

But there is nothing in the record regarding this request or the EPA's response, except for the declaration of White, who confirms that the request sought "'all' of the Administrator's correspondence 'including but not limited to, all letters, emails, text messages, instant messages, voicemails, and phone logs for any phones utilized by . . . EPA Administrator Scott Pruitt . . . from any and all agency and EPA servers, cloud portals, secure websites, computers, tablets, smart phones, etc., sent to or from Mr. Pruitt, with the exception of any records that are or will be publicly available (e.g., through regulations.gov).'" White Decl. ¶ 20. American Oversight merely cites to the allegations made by the requester in the complaint it filed in a separate lawsuit, including the allegation that the EPA declined to process the request because it "did not provide 'key terms, subject matters or titles." Pl.'s MSJ at 5–6 (quoting Amended Complaint ¶ 32, *Ctr. for Biological Diversity v. EPA*, 17-cv-816-TJK (D.D.C. May 23, 2017), ECF No. 7). It does not provide, as it did for the two Icahn requests, any documentation of the request or the EPA's response. Without more, the Court has no basis to determine the actual grounds for the EPA's denial. The Court certainly cannot conclude, particularly given the sheer breadth of the request as described by White, whether the EPA's response was justified in those particular circumstances in light of its search capabilities, as opposed to the product of some categorical policy of requiring subject matters or keywords for every request for communications records.

To be sure, in the EPA's response to each of the requests identified by American Oversight, the EPA stated that the requests failed to provide subject matters or keywords. As noted previously, the EPA cited that deficiency as one of the bases for why it could not process American Oversight's three requests that were the subject of this action. And in responding to the two Icahn requests, the EPA also stated that they "fail[ed] to provide keywords, titles[,] or other relevant information which would allow [it] to identify the subject matter" in which the requester was interested. *See* Pl.'s Ex. 16; Pl.'s Ex. 19 at 1. But when viewed in their broader context, those statements do not reveal a pattern of denying any request that lacks a keyword or subject matter. Those are precisely the types of details that the EPA's own FOIA regulations instruct requesters to include in their requests to ensure that it "will be able to identify and locate records responsive to [those] request[s]." 40 C.F.R. § 2.102(c). It is thus unremarkable that the EPA will specifically ask for these additional details when it concludes that it cannot reasonably discern and locate the records that a requester seeks.

Moreover, the EPA's representation that an employee *would* be able to reasonably locate requested records if the requester provided a keyword or a subject matter does not support the accusation that the EPA had a policy that it *would not* process that request *unless* the requester provided a keyword or subject matter. Indeed, the EPA has provided undisputed evidence directly to the contrary. It points to three requests for communications records, all submitted around the same time as the requests identified by American Oversight to support its policy-or-practice claim, that it agreed to process without any keywords or subject matters. White Decl. ¶ 19; *see* Def.'s Ex. M (request for all "emails to or from emails addresses with the domains @americanchemistry.com and @arkema.com for dates August 17 to September 28, 2017"); Def.'s Ex. N (request for "all emails received by the following EPA addresses from April 12 to

April 15, 2018: sooners7@epa.gov; esp7@epa.gov; and adm14pruitt@epa.gov"); Def.'s Ex. O (request for "all emails between the Franciscan Action Network and EPA employees . . . from Feb. 1 2017 to the date [the] FOIA request is . . . processed"). For that reason, this case is far removed from the circumstances presented in *Muckrock*, on which American Oversight so heavily relies. *See* Pl.'s MSJ at 12–13; Pl.'s Opp'n at 10–11. In *Muckrock*, the plaintiff similarly alleged that the CIA employed a policy of categorically denying requests for email records unless that request provided a specific "to" and "from" field, a time frame, and a subject matter. *See* 300 F. Supp. 3d at 135. Not only did the plaintiff in that case provide multiple instances of the CIA refusing to process requests for no other reason than that the requests lacked those four pieces of information, but the CIA could not come forward with any examples of instances when it did process a request that lacked one of those elements. *See id.* at 135–36. The record here hardly compares.

At bottom, the record before the Court presents only one instance when the EPA denied outright a request for communications records solely because it failed to provide a keyword or subject matter. It presents four instances when the EPA made request-specific determinations regarding its ability to process requests independent of their lack of keywords or subject matters, at least two—if not three—of which appear justified. And it presents three instances when the EPA processed requests for communications records that provided no keywords or subject matters at all, along with a declaration from the EPA official overseeing FOIA requests submitted to the Office of the Director declaring that it does not employ the policy American Oversight alleges. This record is hardly sufficient for a reasonable jury to conclude, as American Oversight must establish to obtain the relief it seeks, "that the [EPA] has adopted, endorsed, or

implemented [a] policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" *Muttitt*, 926 F. Supp. 2d at 293 (quoting *Payne*, 837 F.2d at 491)).[7]

American Oversight tries to string these various requests together by highlighting the one common denominator among each of the EPA's responses—the request for a subject matter or keywords. But in doing so, American Oversight disregards the various other justifications the EPA provided in responding specifically to each request. And beyond that mere commonality, American Oversight provides little evidence that the EPA was or is currently employing a consistent practice of denying requests for communications unless they provide a subject matter or keyword. At best, the record presents inconsistent case-by-case applications of the requirement that a request reasonably describe the records sought to requests for email records.

---

[7] In its consolidated opposition to the EPA's cross-motion and reply in support of its motion, American Oversight appears to retreat from the policy or practice it alleges in its complaint and in its motion for summary judgment, particularly its allegation that the EPA requires a subject matter or keyword. It states that it is instead seeking *first* a declaratory judgment "that a FOIA request for email communications that identifies (a) the agency custodians whose files are to be searched; (b) the correspondents (whether internal to the agency or external, and whether identified by name, position, email address, or domain) whose communications with those custodians are sought; and (c) a discrete date range for the requested records, has 'reasonably described' the records sought," and *second* "an injunction enjoining the agency from requiring FOIA requesters to provide *more information than that*." Pl.'s Opp'n at 19 (emphasis added). To begin with, that is not the policy or practice that American Oversight sought to enjoin in its complaint. *See* Compl. ¶¶ 47–50 (focusing on the EPA's refusal to process a request unless the requester provides a subject matter or keyword); *id.* at 13 (requested relief stating the same). But even assuming that American Oversight had articulated the alleged policy in this way from the start—that is, the EPA has a consistent policy of wrongfully determining that a request identifying custodians, recipients, and a date range is not reasonably described—such a policy or practice is still unsupported by the record. As noted, while some requests, such as the Pruitt Communications Request, appear to have been "reasonably described," others, such as the Icahn requests, were not. And for that reason, while a request that includes the details highlighted by American Oversight may "reasonably describe" communications records, in other circumstances, it may not. Thus, not only would the requested declaratory relief be erroneous as a matter of law, the record does not demonstrate a consistent policy or practice showing American Oversight's entitlement to it.

That record, as a matter of law, does not entitle American Oversight to the equitable relief that it seeks.[8]

Stepping back from the specific shortcomings of the record here, this conclusion makes sense in light of the practicalities of FOIA's framework. An agency must respond to a request that "reasonably describes" the records sought. 5 U.S.C. § 552(a)(3)(A). And that determination is "highly context-specific." *Nat'l Sec. Counselors v. CIA* ("*NSC I*"), 898 F. Supp. 2d 233, 278 (D.D.C. 2012). While the "linchpin inquiry is whether 'the agency is able to determine precisely what records are being requested,'" *Dale v. Internal Revenue Serv.*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (quoting *Tax Analysts*, 117 F.3d at 610), "'[a]n agency need not honor a request that requires an unreasonably burdensome search' or would require the agency 'to locate, review, redact, and arrange for inspection a vast quantity of material,'" *Sack v. CIA*, 53 F. Supp. 3d 154, 163 (D.D.C. 2014) (citations omitted) (quoting *Armstrong v. Bush*, 139 F.R.D. 547, 553 (D.D.C. 1991) then *Am. Fed. of Gov't Emps. v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990)). "This is so because 'FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters.'" *Id.* (quoting *Assassination Archives & Research Ctr. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989)).

---

[8] At the end of its consolidated opposition and reply brief, American Oversight, for the first time, states that the court should at least "permit American Oversight limited discovery into [the EPA's] FOIA practices." Pl.'s Opp'n at 20. American Oversight, however, has not moved under Federal Rule of Civil Procedure 56(d) for additional discovery, nor has it attempted to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the EPA's motion, as the Rule requires. *See also Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99–100 (D.C. Cir. 2012). Indeed, its only argument in favor of additional discovery is that it has "raised a genuine dispute of material fact about whether EPA has in fact engaged in" the pattern or practice alleged, Pl.'s Opp'n at 20, the same basis for its opposition to the EPA's motion for summary judgment, and an argument that the Court has already rejected in determining that the EPA is entitled to summary judgment.

Thus agencies, like the EPA, often engage in cooperative discussion to narrow and focus requests for the benefit of both the agency and the requester. Such discussions, as this action makes clear, may not always prove successful, and clarification may not always be necessary or warranted. As noted, however, those discussions will necessarily be context-specific, and that will likewise lead to context-specific grounds for denial. And for that very reason, they are generally ill-suited to the type of policy-or-practice claim that American Oversight brings here. The Court ultimately will not, based on this record, prospectively hamper that process, particularly when it concerns an agency's requests for information that would no doubt make it easier for an agency to locate the specific records that a requester seeks. The Court does not foreclose that an agency may systematically abuse that process in a way that warrants judicial intervention. But that is not the record here.

## IV.    Conclusion

For all of the above reasons, the Court will deny Plaintiff's Motion for Summary Judgment, ECF No. 8, and grant Defendant's Cross-Motion for Partial Summary Judgment, ECF No. 11. A separate order will issue.


/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: April 29, 2019